**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

WILLIAM CUKR, individually and derivatively on behalf of KCAP Lending Fund XIII, LP; KCAP RE Fund XI, LP; and KCAP RE Fund XII, LP,

Plaintiffs,

v.

LASATER CAPITAL, LLC (f/k/a KEYCITY CAPITAL, LLC); KCAP LENDING FUND XIII, LP; KCAP RE FUND XI, LP; KCAP RE FUND XII, LP; TIE LASATER; SHILOH LASATER; and DAVID WORLEY,

Defendants, and, as to the derivative claims, Nominal Defendants.

Civil Action No. 4:26-cv-01350

JURY TRIAL DEMANDED

**PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT**

Plaintiff William "Bill" Cukr ("Cukr"), individually and derivatively on behalf of KCAP Lending Fund XIII, LP ("Lending Fund XIII"), KCAP RE Fund XI, LP ("RE Fund XI"), and KCAP RE Fund XII, LP ("RE Fund XII"), files this Verified Complaint against Defendants Lasater Capital, LLC (f/k/a KeyCity Capital, LLC) ("Lasater Capital"), Lending Fund XIII, RE Fund XI, RE Fund XII, Tie Lasater ("T. Lasater"), Shiloh "Boone" Lasater ("B. Lasater"), and David Worley ("Worley," together with T. Lasater and B. Lasater, the "Individual Defendants," and collectively with Lasater Capital and the funds, "Defendants"), and alleges as follows:

## I. INTRODUCTION

1. This is a securities-fraud case about a private-equity firm that operated its business at investors' expense. Defendant Lasater Capital and the brothers who run it, T. Lasater and B.

Lasater, raised money from investors like Cukr by promising "zero principal losses," an "impeccable financial record with no capital losses, no missed preferred dividends," and returns that "always exceed" their targets. In reality, Defendants were operating an overleveraged, failing enterprise.

2. Properties belonging to Defendants were sliding into foreclosure, affiliates were defaulting on more than $100 million in loans, and the funds into which Plaintiff invested could not pay the monthly and quarterly returns Defendants guaranteed. Rather than tell investors the truth, Defendants concealed it—refusing to produce financial statements, assuring investors their capital was not at risk, quietly amending partnership agreements to permit beneficial loans, and creating a new senior class of investors to dilute the people who had already paid in.

3. Cukr invested $450,000 in two funds in reliance on the Defendants' misrepresentations: $200,000 in Lending Fund XIII; and $250,000 in RE Fund XI, of which Defendants later reallocated $83,557.10 to RE Fund XII. In nearly four years, he has received only $31,335.34 in cash. Although Cukr elected to receive his distributions in cash and never agreed to reinvest them, Defendants withheld another $210,950.01 in earnings credited to him and added it to his capital accounts, and none of his principal has been returned. His investments have produced no cash since early 2024, his redemption request has gone unanswered, and Defendants have refused his repeated requests for even the most basic information about where his money went.

4. On June 9, 2026, the Texas State Securities Board confirmed Plaintiff's concerns publicly by issuing an emergency cease-and-desist order finding Defendants sold unregistered securities through materially misleading statements while intentionally withholding the truth about defaults, foreclosures, bankruptcies, and receiverships across the enterprise. T. Lasater himself has admitted, "We have made mistakes." This action seeks to recover what Cukr lost.

## II. PARTIES

5. Plaintiff William "Bill" Cukr is an individual and citizen of Texas residing in Denton County. He is an accredited investor who invested $450,000 in Lending Fund XIII and RE Fund XI (part of which Defendants later reallocated to RE Fund XII), has received only $31,335.34 in cash, and has recovered none of his principal.

6. Defendant Lasater Capital, LLC is a Texas limited liability company with its principal place of business at 1211 South White Chapel Boulevard, Southlake, Texas 76092. It serves as investment manager and/or general partner—or controls the general partner—of the KCAP family of funds, including the three funds at issue. It may be served through its registered agent or through its CEO, Tie Lasater, at that address.

7. Defendant KCAP Lending Fund XIII, LP is a Delaware limited partnership with its principal place of business at the Southlake address.

8. Defendant KCAP RE Fund XI, LP is a Delaware limited partnership with its principal place of business at 1211 South White Chapel Boulevard, Southlake, Texas 76092.

9. Defendant KCAP RE Fund XII, LP is a Delaware limited partnership with its principal place of business at the Southlake address, managed or controlled by Lasater Capital.

10. Defendant Tie Lasater is an individual who, upon information and belief, resides in or near Southlake, Tarrant County, Texas.

11. Defendant Shiloh "Boone" Lasater is an individual who, upon information and belief, resides in or near Southlake, Tarrant County, Texas.

12. Defendant David Worley is an individual who, upon information and belief, resides in or near Southlake, Tarrant County, Texas

## III. JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the federal securities laws—Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, and Section 20(a), 15 U.S.C. § 78t(a).

14. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a) because they are so related to the federal claims that they form part of the same case or controversy.

15. This Court has personal jurisdiction over all Defendants. Lasater Capital is a Texas LLC headquartered in this District; the Individual Defendants reside and conduct business in this District; the funds maintain their principal places of business in this District; and all Defendants transacted business in this District, committed tortious acts in this District, and directed their solicitations at Plaintiff, a Texas resident, from within this District.

16. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and all Defendants reside or transact business in this District.

## IV. FACTUAL BACKGROUND

### A. Lasater Capital and the KCAP Funds

17. Lasater Capital is a private-equity firm headquartered in Southlake, Texas. It was founded in approximately 2018 by brothers T Lasater and B. Lasater. It holds itself out as a "company built on the principles of integrity, trust, and communication."

18. Lasater Capital manages a family of private investment funds under the "KCAP" brand, including multiple real-estate equity funds and at least one asset-backed lending fund. The funds are Delaware limited partnerships for which Lasater Capital or an affiliate serves as

investment manager and/or controls the general partner. The real-estate funds focus on acquiring, renovating, and managing Class B and C multifamily apartment communities in Sunbelt markets; the lending fund was designed to make asset-backed loans paying a stated preferred return.

19. A small group of principals controls every aspect of the funds—investment decisions, financial reporting, distributions to investors, and communications with limited partners: Defendants T. Lasater (CEO), B. Lasater (CFO/COO), and Worley (General Counsel and Chief Compliance Officer).

**B. The Solicitation of Cukr's Investments**

20. In or around late 2022, Defendants solicited Cukr to invest in Lending Fund XIII, providing a Private Placement Memorandum ("PPM"), a Limited Partnership Agreement ("LPA"), and marketing materials describing the fund and Lasater Capital's purported track record.

21. Those materials, disseminated in or around 2022 through pitch decks, brochures, and online platforms, represented that Lasater Capital had an "impeccable financial record with no capital losses, no missed preferred dividends, and consistently exceeds targeted returns," and that Lasater Capital was a "Vertically-integrated Operator with over 1000+ completed projects" with "Zero Principal Losses" that would "Always Exceed Targeted Returns." Defendants represented that the lending fund was a safe, predictable investment paying an approximately 12% annualized preferred return monthly, secured by underlying real-estate collateral, over a two-year term.

22. In reliance, on or about December 1, 2022, Cukr invested $200,000 in Lending Fund XIII. In or around late 2022 and early 2023, Defendants solicited Cukr to invest in RE Fund XI, later allocating part of that investment to RE Fund XII. Defendants provided substantially similar materials touting "zero principal losses" and targeted net returns of 25% or more, and represented that investors would receive an 8% annualized preferred return paid quarterly. In reliance, in or around January 2023, Cukr invested $250,000 in RE Fund XI. In his subscription

documents, Cukr elected to have his distributions paid to him in cash.

23. In total, Cukr invested $450,000 and has received only $31,335.34 in cash: $29,636.71 in Lending Fund XIII interest paid through approximately February 2024, and a single $1,698.63 distribution from RE Fund XI in or around January 2023. The remaining $210,950.01 in earnings credited to his accounts—$49,990.66 in Lending Fund XIII, $139,384.83 in RE Fund XI, and $21,574.52 in RE Fund XII—was not paid to him. Instead, contrary to his cash election and without his agreement, Defendants withheld those earnings and added them to his capital accounts as though he had made additional capital contributions. None of his principal has been returned. As Defendants report them, his three capital accounts carry a combined balance of $660,950.01.

**C. Evidence of Defendants' Material Misrepresentations and Omissions**

24. On information and belief, when Defendants solicited these investments, their real-estate portfolio was overleveraged and deteriorating, and the enterprise was sliding toward widespread foreclosures, bankruptcies, receiverships, and litigation.

25. On June 9, 2026, the Texas State Securities Board ("TSSB") issued Emergency Cease-and-Desist Order No. ENF-26-CDO-1898 naming Lasater Capital, T. Lasater, and B. Lasater as respondents. The TSSB found that, since approximately 2024, affiliated entities had defaulted on loans exceeding $100 million, lost properties through foreclosure, filed Chapter 11 bankruptcies, been sued by lenders and investors, and been placed in receivership—all while Lasater Capital's website continued to claim that they had "protected the entirety of the investor principal" and "never missed a distribution." The TSSB further found that the fund interests were securities sold without a permit, that respondents were unregistered as dealers or agents, and that no exemption applied because the securities were offered through materially misleading statements while material information was intentionally withheld.

26. In or around September 2025, Arbor Realty Trust foreclosed on a six-property, 1,240-unit multifamily portfolio in Memphis, Tennessee, held in KCAP RE Fund III—just one year after Lasater Capital's website valued that portfolio at $106 million. In August 2025, lenders foreclosed on the 145-unit Canyon Village in Bryan, Texas (held in RE Fund XI) and the 100-unit Joshua Landing in Joshua, Texas. Appendix A to the Fund 14 PPM disclosed still more:

- completed foreclosures at Executive Apartments (San Antonio), Canyon Village, 4945 Sorrento Court (Cape Coral), the six Memphis properties, Joshua Landing, and 1821 13th Street West (Bradenton); pending foreclosures at Villa Gardens, The Hive, and properties in Montgomery, Alabama;

- bankruptcies of KCAP Villa Gardens LLC, KCAP Dominik LLC, KCAP RE Fund II LLC, and KCAP Holleman Oaks LLC;

- receiverships over The Hive Dallas, the Montgomery properties, Meadows at Ferguson Dallas, and Dominik College Station; and

- judgments exceeding $20 million against KCAP entities and the Lasaters.

The PPM repeatedly minimized these events as not affecting the Partnership's "operations or investment portfolio." That same Appendix A identified pending litigation by the City of Dallas, Happy State Bank, X-Caliber, and numerous other creditors and counterparties. On information and belief, the breadth of these proceedings was material to investors evaluating whether the funds could preserve capital, meet distributions, and honor redemption obligations.

27. The physical condition of the underlying properties further undermined Defendants' promotional narrative. A joint investigation by The Dallas Morning News and Hearst newspapers documented critical foundation and structural issues, unsafe ceilings, stairwells, and balconies, raw sewage backups, black mold, rat infestations, and extended periods without running water at properties in Dallas, Farmers Branch, Bryan, and College Station. The City of Dallas placed Meadows at Ferguson into receivership, and the City of Bryan issued condemnation-related orders concerning Canyon Village. On information and belief, this was inconsistent with the

construction management and operational expertise Defendants touted to investors.

28. Even as properties fell to foreclosure, Defendants kept advertising. Instagram advertisements for Lasater Real Estate Fund 14 claimed that "in 20+ years managing over $500 million in assets, we've never lost investor capital." T. Lasater built a public profile as "The World's #1 Capital Closers Coach," using speaking fees, syndicated radio, social-media reach, and celebrity endorsements—including Vanilla Ice, Mel Gibson, Kathy Ireland, and a former Dallas Cowboys player—to promote alleged projected returns of 20% or more.

**D. Evidence of Forethought**

30. In or around April 2023—about four months after Cukr invested in Lending Fund XIII—Defendants unilaterally amended the fund's partnership agreement to permit loans to entities affiliated with Lasater Capital ("Affiliated Loans"). The amendment itself acknowledged that such loans "involve conflicts of interest on the part of the General Partner" and that the General Partner "has an incentive to negotiate rates and terms for such loans . . . that are favorable to the affiliated entity at the expense of the Partnership." On information and belief, the Defendants did not obtain the authorization the governing agreement required, did not meaningfully explain the conflict, and did not disclose how the loans would expose Cukr to the distress of failing affiliated funds.

31. Defendants pushed the amendment through by passive consent. Though the change was emailed to investors, the email itself flagged only distribution-waterfall and investment-limitation changes—burying the conflict-laden Affiliated Loans provision in the redlined documents attached without direct commentary. On information and belief, Defendants then caused Lending Fund XIII to make substantial loans to distressed KCAP affiliates in foreclosure and receivership—diverting the fund's capital from arm's-length, collateralized loans and subordinating its investors to the interests of Defendants' broader enterprise.

32. Beginning in approximately February 2024, Defendants stopped making monthly interest payments to Lending Fund XIII investors, including Cukr; interest thereafter accrued only on a "paid-in-kind" basis, inflating nominal balances without any corresponding cash. On information and belief, the general partner made that change unilaterally, on the stated ground that the fund lacked available cash—the very condition Defendants' assurances concealed (¶ 35). Cukr received $29,636.71 in cash interest before the suspension. Since then, the general partner has added all $49,990.66 in interest credited to him to his capital account, even though Cukr had elected cash distributions and never agreed to reinvest them. None of his $200,000 principal has been returned. Defendants continued charging management and other fees while withholding distributions and refusing the information needed to determine whether the fund had the cash, receivables, or collateral to support the balances it reported.

33. Cukr's Lending Fund XIII investment carried a two-year term (¶ 22) that ended on or about November 30, 2024. Defendants did not return his capital at the end of the term. On or about March 13, 2024, Cukr submitted a written request to redeem his investment in Lending Fund XIII, which Defendants confirmed receiving that same day. Defendants have neither honored nor responded to that request.

34. The RE funds have paid Cukr even less. Although Defendants represented that RE Fund XI would pay an 8% preferred return quarterly (¶ 22), it paid Cukr a single cash distribution of $1,698.63, in or around January 2023. From approximately February 2023 through at least March 2026, every distribution credited on his RE Fund XI and RE Fund XII interests was withheld and added to his capital accounts rather than paid in cash—$139,384.83 in RE Fund XI and $21,574.52 in RE Fund XII (¶¶ 8–9)—notwithstanding his cash election and without his agreement. RE Fund XII has never paid Cukr any cash, and neither fund has returned any of his

principal. The LPAs' Waived Distribution provision permits a distribution to be treated as an additional capital contribution only with the limited partner's affirmative agreement (LPA § 6.1(a)). Cukr never gave that agreement as to any distribution from any fund.

35. Despite the suspensions, Defendants consistently assured investors, including Cukr, that the Lending Fund XIII loans were merely in forbearance and that there was no risk of loss of investment—providing no financial statements, no loan-level detail, and nothing to support those assurances. The TSSB's later findings confirm that the assurances omitted material facts about the $100 million-plus in defaults, foreclosures, bankruptcies, receiverships, and litigation.

**E. Cukr's Requests**

36. From at least 2024 through the present, Cukr repeatedly, and on a quarterly basis, requested basic financial information about the funds, including:

a. audited or unaudited financial statements (balance sheet, income statement, statement of cash flows, statement of equity, and notes) for any period from inception through the present;

b. a detailed loan tape for Lending Fund XIII showing borrower identity, loan amount, note rate, terms, origination date, outstanding balance, forbearance status, payment history, and foreclosure status;

c. true and full information regarding the status of the business and financial condition of the partnerships;

d. a schedule of Affiliated Loans and their terms;

e. copies of federal, state, and local income tax returns;

f. a current list of the names and addresses of all partners;

g. copies of all partnership agreements, amendments, and powers of attorney; and

h. an accounting for all contributions and distributions.

37. Defendants refused every request. Each demand for financial statements was denied; each request to meet and discuss the funds' condition went unanswered. This blanket

refusal violated the partnership agreements and the Delaware Revised Uniform Limited Partnership Act, 6 Del. C. § 17-305, which entitles limited partners to true and full information regarding the status of the business and financial condition of the partnership.

38. In or around September 2025, Defendants produced a summary Lending Fund XIII loan tape as of June 30, 2025. Cukr's review showed accrued interest substantially lower than expected given the roughly 18-month suspension of investor payments since February 2024, revealing an apparent cash discrepancy of approximately $1,000,000. Despite repeated requests, Defendants have never explained it.

39. In or around May 2023, Defendants reallocated $89,743.32 of Cukr's RE Fund XI account—$83,557.10 of his $250,000 principal and $6,186.22 in accrued earnings—to RE Fund XII. Defendants then issued capital calls for both funds. When certain investors, including Cukr, declined to contribute additional capital, Defendants created a new class of senior investors with priority over all original investors for both return of capital and a higher preferred return—without a proper vote or other authorization of the existing limited partners, diluting Cukr's contractual and economic rights.

40. On or about February 4, 2025, Defendants sent investors an updated copy and redline of the revised RE Fund XI partnership agreement reflecting the senior class. Defendants did not explain that the documents constituted a vote, did not disclose the effect on existing investors' priority rights, and did not explain how the change affected RE Fund XII. When Cukr requested documentation of the communication and voting process, Defendants did not respond. Throughout the distribution suspension, Defendants continued charging management and other fees, deepening the conflict between their interests and those of the original limited partners.

### F. The Enterprise-Wide Pattern of Misconduct

41. Cukr's experience is not isolated. In November 2025, Charles Skaugstad and

related entities filed *Skaugstad v. Tie Lasater*, No. 3:2025cv00127 (S.D. Iowa), alleging fraud in connection with KCAP RE Fund II investments; the docket reflects KCAP RE Fund II's bankruptcy filing on January 22, 2026.

43. Additional matters involving Defendants include *Besso v. KeyCityCapital*, No. 4:2023cv00906 (N.D. Tex.) (FLSA employment case); *Nobles v. Lasater*, No. 3:2026cv02030 (S.D. Cal.), in which 72-year-old Michele Nobles alleges the loss of approximately $1 million in retirement savings; *Bowman v. KCAP RE Fund II LLC*, No. 3:24-cv-02472 (N.D. Tex.) (dismissed without prejudice); and *Starling v. KeyCity Capital*, No. 3:21-cv-00818-S (N.D. Tex.) (TCPA claims, settled December 2022). The *Hugar v. KeyCity Capital, LLC* matter produced a July 2025 default judgment of $525,000 plus $143,722.36 in interest against KeyCity Capital, T. Lasater, and B. Lasater, now on appeal (Eleventh Court of Appeals, No. 11-25-00342-CV).

44. These proceedings by investors, lenders, municipalities, and service providers across multiple funds allege consistent patterns of misrepresentation, concealment, property neglect, and refusal to provide financial information.

## V. CLAIMS FOR RELIEF

45. Each Count below incorporates paragraphs 1 through 44 and paragraph 46, but not the allegations of any other Count.

46. Every claim is timely. Cukr purchased his interests between December 2022 and January 2023 (¶¶ 21–22), less than five years before this action. Defendants concealed the facts underlying these claims through their "forbearance" and "no risk of loss" assurances and their refusal of every information request (¶¶ 35–37). Cukr did not discover, and through reasonable diligence could not have discovered, those facts—including the facts establishing Defendants' scienter—before September 2025 at the earliest, when the Lending Fund XIII loan tape revealed

an unexplained cash discrepancy of approximately $1,000,000 (¶ 38); the TSSB's June 9, 2026 findings disclosed the rest (¶ 25). The claims are therefore timely under 28 U.S.C. § 1658(b) and Tex. Gov't Code § 4008.062, and the state-law claims are further preserved by the discovery rule and the doctrine of fraudulent concealment. The contract, implied-covenant, and fiduciary claims also rest on continuing breaches—including the ongoing withholding of distributions and information and the ongoing collection of fees—that occurred within every applicable limitations period.

**COUNT I**
**Violation of Section 10(b) of the Exchange Act and Rule 10b-5**
**(Against Lasater Capital, T. Lasater, B. Lasater, Lending Fund XIII, RE Fund XI, and RE Fund XII)**

47. The limited-partnership interests Cukr purchased are securities. 15 U.S.C. § 78c(a)(10). These Defendants offered and sold them using the mails, email, and the internet (¶¶ 20–22).

48. In connection with Cukr's purchases, these Defendants made the following untrue statements of material fact:

a. in pitch decks, brochures, and online materials provided to Cukr in November–December 2022 (Lending Fund XIII) and December 2022–January 2023 (RE Fund XI), that Lasater Capital had an "impeccable financial record with no capital losses, no missed preferred dividends," "Zero Principal Losses," and would "Always Exceed Targeted Returns" (¶¶ 21–22);

b. in the Lending Fund XIII PPM and marketing materials (November–December 2022), that the fund was a safe, predictable investment paying an approximately 12% annualized preferred return monthly, secured by real-estate collateral (¶ 21); and

c. in the RE Fund XI materials (December 2022–January 2023), that the fund targeted net returns of 25% or more and would pay an 8% annualized preferred return quarterly (¶ 22).

49. The same materials omitted facts necessary to make those statements not

misleading: that the KCAP enterprise's real-estate portfolio was overleveraged and deteriorating; that affiliated properties and entities were headed toward default, foreclosure, bankruptcy, and receivership; and that the funds' ability to pay the promised returns depended on that failing enterprise (¶¶ 24–28).

50. The statements were false and misleading when made for the reasons alleged in ¶¶ 24–28, as the TSSB confirmed in finding that the fund interests were offered through materially misleading statements while material information was intentionally withheld (¶ 25).

51. Each of these Defendants made the statements:

- Lasater Capital, as investment manager and controller of each fund's general partner, had ultimate authority over the content and dissemination of the offering materials;
- T. Lasater, as CEO, directed and approved them;
- B. Lasater, as CFO/COO, supplied and approved the financial and performance information in them; and
- each fund was the issuer whose offering documents contained them (¶¶ 6–11, 19). Alternatively, each is liable under Rule 10b-5(a) and (c) for disseminating the statements as part of a scheme to defraud.

52. These Defendants acted knowingly or with severe recklessness. T. Lasater and B. Lasater controlled the operations, financing, and reporting of every KCAP fund and affiliate (¶¶ 10–11, 19) and therefore knew the condition of the properties and loans behind their track-record claims; the misrepresented facts concerned the core of the enterprise's business; the TSSB found that material information was intentionally withheld (¶ 25); Defendants repeated the same claims after properties had been lost to foreclosure (¶ 29) and concealed the funds' condition once distributions stopped (¶¶ 31, 35–37); and they were motivated to keep raising capital to generate fees and sustain the enterprise (¶¶ 29, 32, 40). T. Lasater's and B. Lasater's scienter is imputed to Lasater Capital and the funds.

53. Cukr read and relied on the statements identified in paragraph 48 in deciding to invest (¶¶ 21–22). Alternatively, as to the omissions, reliance is presumed. *See Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153–54 (1972) ("Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.").

54. The risks Defendants concealed materialized and caused Cukr's loss: the RE funds paid no cash after January 2023, and Lending Fund XIII stopped paying cash interest in early 2024 (¶¶ 32, 34); affiliated properties were foreclosed and affiliated entities entered bankruptcy and receivership (¶ 26); the Lending Fund XIII loan tape revealed an unexplained cash shortfall (¶ 38); and the TSSB disclosed the enterprise-wide defaults (¶ 25). Cukr has recovered none of his $450,000 principal and has received only $31,335.34 in cash on it (¶ 23).

**COUNT II**
**Control-Person Liability Under Section 20(a) of the Exchange Act**
**(Against T. Lasater, B. Lasater, and Lasater Capital)**

55. Lasater Capital and each fund committed the primary violations alleged in Count I.

56. T. Lasater and B. Lasater controlled Lasater Capital and the funds. As co-founders, Managing Partners, CEO, and CFO/COO, they had the power to direct—and did direct—the funds' management, offering materials, and financial reporting, including the specific statements at issue (¶¶ 10–11, 19). Lasater Capital, as investment manager and controller of each fund's general partner, had the power to control—and did control—the funds' offering materials and investor communications (¶¶ 6, 18).

57. These Defendants are jointly and severally liable with the primary violators for Cukr's damages. 15 U.S.C. § 78t(a).

**COUNT III**
**Violation of the Texas Securities Act, Tex. Gov't Code §§ 4008.052, 4008.055**
**(Against All Defendants)**

58. The interests Cukr purchased are securities under the Texas Securities Act, Tex. Gov't Code tit. 12 (¶ 25).

59. Lending Fund XIII, RE Fund XI, and RE Fund XII, as issuers, and Lasater Capital, which solicited Cukr and furnished the offering materials, offered and sold those securities to Cukr (¶¶ 20–22).

60. The offers and sales were made by means of the untrue statements and omissions of material fact identified in ¶¶ 21–22 and 24–28, and Cukr did not know of them. The funds and Lasater Capital are therefore liable sellers under Tex. Gov't Code § 4008.052(a).

61. Lasater Capital is also liable because it controlled the funds (¶ 6), and T. Lasater and B. Lasater are liable because they controlled Lasater Capital and the funds (¶¶ 10–11, 19). Each is jointly and severally liable to the same extent as the sellers. *Id.* § 4008.055(a).

62. On information and belief, Worley, as General Counsel and Chief Compliance Officer, reviewed and approved the legal and compliance content of the offering materials (¶ 12) and, with at least reckless disregard for the truth or the law, materially aided the sellers. T. Lasater and B. Lasater likewise materially aided the sellers by directing and supplying the content of those materials. Each is jointly and severally liable as an aider. *Id.* § 4008.055(c).

63. Cukr tenders his interests and is entitled to rescission—the consideration paid plus interest at the legal rate from the date of payment, less income received—or, if he no longer owns the securities, rescissory damages, together with reasonable attorneys' fees and costs. *Id.* §§ 4008.056, 4008.057, 4008.060.

**COUNT IV**
**Common-Law Fraud**
**(Against Lasater Capital, T. Lasater, B. Lasater, Lending Fund XIII, RE Fund XI, and RE Fund XII)**

64. To induce Cukr to invest, these Defendants made the material representations identified in paragraph 48 and failed to disclose the facts identified in ¶¶ 24–28, which they had a duty to disclose because their partial statements about the funds' safety and track record were misleading without them.

65. The representations were false when made (¶¶ 24–28). T. Lasater and B. Lasater knew they were false or made them recklessly, as positive assertions, without knowledge of their truth (¶¶ 10–11, 19, 25). Their knowledge is imputed to Lasater Capital and the funds.

66. These Defendants intended Cukr to rely on the representations, and he actually and justifiably relied on them in investing $450,000 (¶¶ 21–23).

67. Cukr was injured as a result: he invested $450,000, has received only $31,335.34 in cash, and has recovered none of his principal (¶ 23). Because the fraud was intentional and/or made with gross negligence, Cukr is also entitled to exemplary damages. Tex. Civ. Prac. & Rem. Code § 41.003(a)(1), (3).

**COUNT V**
**Breach of Fiduciary Duty (Direct)**
**(Against Lasater Capital, T. Lasater, B. Lasater, and Worley)**

68. Because the funds are Delaware limited partnerships, Delaware law governs Defendants' fiduciary duties. Tex. Bus. Orgs. Code § 1.104.

69. Lasater Capital, as investment manager and controller of each fund's general partner, owed Cukr duties of loyalty and care, including the duty to disclose fully and fairly all material information when seeking limited-partner action. T. Lasater, B. Lasater, and Worley, as the officers who controlled Lasater Capital and exercised control over the funds' property and

affairs (¶¶ 10–12, 19), owed the same duties. *See In re USACafes, L.P. Litig.*, 600 A.2d 43, 48–49 (Del. Ch. 1991) ("Any officer (director cases are cited in support here) who knowingly causes the corporation to commit a breach of trust causing loss . . . is personally liable to the beneficiary of the trust. . . .").

70. Defendants breached those duties by:

a. obtaining "deemed" consent to the Affiliated Loans amendment through a five-business-day passive-consent email that omitted the provision and its acknowledged conflicts (¶¶ 30–31)—conduct T. Lasater directed and, on information and belief, Worley structured and approved;

b. creating a senior class with priority over Cukr's interests in RE Fund XI and RE Fund XII without a proper vote and without disclosing its effect on existing limited partners (¶¶ 39–40);

c. refusing every request for the information to which Cukr was entitled (¶¶ 36–37)—a refusal T. Lasater directed, B. Lasater implemented through his control of the financial records, and, on information and belief, Worley approved; and

d. assuring Cukr that the Lending Fund XIII loans were merely "in forbearance" with "no risk of loss of investment" while withholding the facts that contradicted those assurances (¶ 35).

71. These breaches injured Cukr individually—by subordinating his priority rights, depriving him of an informed vote, and denying him information to which he was entitled—independent of any injury to the funds. Cukr has been damaged in an amount to be proven at trial. The Affiliated Loans and fee extraction, which injured the funds, are asserted derivatively in Counts X and XI.

**COUNT VI**
**Breach of Contract**
**(Against Lasater Capital, Lending Fund XIII, RE Fund XI, and RE Fund XII)**

72. The LPA of each fund is a valid, enforceable contract among Cukr, the fund, and its general partner, which Lasater Capital is or controls (¶¶ 6, 18). Cukr performed by contributing

$450,000 (¶ 23).

73. These Defendants breached the following LPA obligations:

a. LPA §§ 6.1(a), 6.3 (distributions, preferred return, and Waived Distributions), by treating $210,950.01 in distributions owed to Cukr as additional capital contributions without his affirmative agreement and contrary to his election to receive distributions in cash (¶¶ 22–23, 32, 34);

b. LPA §§ 11.3, 11.6 (information rights), by refusing every request for financial statements and partnership information (¶¶ 36–37);

c. LPA § 3.6 (affiliated transactions), by causing Lending Fund XIII to make Affiliated Loans without the required authorization (¶¶ 30–31);

d. LPA §§ 12.1, 12.3, 12.4 (amendments and new classes), by amending the LPAs and creating a senior class without the required vote (¶¶ 31, 39–40);

e. LPA § 10.1 (fees), by charging management and other fees while withholding all distributions (¶¶ 32, 40); and

f. Lending Fund XIII LPA §§ 1.5, 8.9 (term and return of capital), by failing to return Cukr's capital when the fund's two-year term ended on or about November 30, 2024, and ignoring his redemption request (¶ 33).

74. Cukr has been damaged in an amount to be proven at trial, including at least his $249,990.66 Lending Fund XIII capital account ($200,000 in principal and $49,990.66 in interest withheld from him) and accrued but unpaid returns, and is entitled to his attorneys' fees. Tex. Civ. Prac. & Rem. Code § 38.001(b)(8).

**COUNT VII**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(Against Lasater Capital, Lending Fund XIII, RE Fund XI, and RE Fund XII)**

75. In the alternative to Count VI, to the extent the LPAs do not expressly address the conduct below, each LPA contains an implied covenant of good faith and fair dealing that cannot be eliminated. 6 Del. C. § 17-1101(d).

76. Under the implied covenant of good faith and fair dealing, the general partner had a duty to not (a) use its discretion over distributions, paid-in-kind accruals, and fees to pay itself

while withholding all cash from limited partners (¶¶ 32, 34, 40); (b) obtain amendments through passive-consent notices that concealed their material terms (¶¶ 30–31, 40); or (c) use its amendment power to subordinate existing limited partners to a new class after they declined a capital call (¶ 39).

77. These Defendants breached those implied obligations, depriving Cukr of the fruits of his bargain and damaging him in an amount to be proven at trial.

**COUNT VIII**
**Unjust Enrichment**
**(Against Lasater Capital, T. Lasater, B. Lasater, Lending Fund XIII, RE Fund XI, and RE Fund XII)**

78. In the alternative to Counts VI and VII, and to the extent no express contract governs, these Defendants obtained benefits from Cukr by fraud and by taking undue advantage: the funds received and retained his $450,000 in principal and the $210,950.01 in earnings withheld from him, and Lasater Capital and, on information and belief, T. Lasater and B. Lasater received management and other fees derived from that capital while distributions were suspended (¶¶ 23, 32, 40).

79. Retaining those benefits would be unconscionable. Cukr is entitled to restitution in an amount to be proven at trial.

**COUNT IX**
**Conversion**
**(Against Lasater Capital and Lending Fund XIII)**

80. Cukr's Lending Fund XIII investment reached the end of its two-year term on or about November 30, 2024, entitling him to the return of his capital—his $200,000 principal and the interest credited to his account (¶¶ 7, 21, 33).

81. Cukr demanded its return, and these Defendants refused (¶ 33). Instead, they exercised dominion and control over that capital inconsistent with Cukr's rights by withholding it

and, on information and belief, diverting it to affiliated borrowers (¶ 31).

82. Cukr has been damaged in the amount of the converted capital, plus interest.

**COUNT X**
**Waste of Partnership Assets (Derivative)**
**(Against Lasater Capital, T. Lasater, B. Lasater, and Worley; Funds as Nominal Defendants)**

83. Cukr brings this Count derivatively on behalf of Lending Fund XIII, RE Fund XI, and RE Fund XII. He was a limited partner of each fund at the time of each challenged transaction affecting that fund (as to RE Fund XII, since the May 2023 reallocation) and remains one. 6 Del. C. § 17-1002. This action is not a collusive one to confer jurisdiction the Court would otherwise lack. Fed. R. Civ. P. 23.1(b).

84. Cukr fairly and adequately represents the funds and their limited partners. Fed. R. Civ. P. 23.1(a). His direct claims against the funds do not create a disabling conflict. First, his direct and derivative claims arise from the same misconduct by the same persons—Lasater Capital and its principals—and seek to remedy it. Second, the derivative claims seek recovery only from those wrongdoers, not from other limited partners; every dollar recovered derivatively enlarges the funds' assets, so success on the derivative claims complements rather than competes with any recovery on his direct claims.

85. Third, Cukr's economic stake in the funds is substantial—$450,000 in unreturned principal and capital accounts that Defendants report at $660,950.01 (¶ 23)—and depends on restoring fund assets. Fourth, the relief he seeks derivatively (restoration of diverted capital, an end to affiliated lending and fee extraction, and disclosure of the funds' condition) is the relief every limited partner would want, and the other limited partners invested on the same representations and have suffered the same suspension of distributions (¶¶ 32, 34, 41). Fifth, Cukr is informed and actively directing this litigation, having pursued the funds' financial information

quarterly since 2024 (¶¶ 36–37), and he has retained counsel experienced in complex securities litigation. Sixth, he has no collateral or personal motive adverse to the funds. Seventh, to the extent any judgment on his direct claims could be satisfied from fund assets, Cukr will seek satisfaction first from Lasater Capital and the Individual Defendants.

86. Cukr made no demand on the general partner because demand would have been futile. 6 Del. C. § 17-1003. Lasater Capital controls each fund's general partner, and T. Lasater and B. Lasater control Lasater Capital (¶¶ 6, 10–11). Each personally directed or approved the challenged transactions, Lasater Capital collected the challenged fees, and each faces a substantial likelihood of liability for them. None could impartially consider a demand to cause the funds to sue themselves.

87. The following transactions exchanged fund assets for consideration so disproportionately small that no person of ordinary, sound business judgment could conclude the funds received adequate value:

a. Lending Fund XIII's Affiliated Loans to distressed KCAP entities in foreclosure and receivership that could not repay, on terms favoring the borrowers, and, on information and belief, the failure to enforce those loans (¶¶ 30–31); and

b. the management and other fees charged to each fund while it paid no distributions and its assets were impaired (¶¶ 32, 34, 40).

88. Lasater Capital approved and executed these transactions; T. Lasater directed them; B. Lasater executed them through the funds' financial operations; and, on information and belief, Worley approved the Affiliated Loans' legal structure and the passive-consent mechanism used to authorize them (¶¶ 30–31).

89. The funds have been damaged in an amount to be proven at trial, including impaired loan receivables and fees paid.

**COUNT XI**
**Aiding and Abetting Breach of Fiduciary Duty (Derivative)**
**(Against T. Lasater, B. Lasater, and Worley; Funds as Nominal Defendants)**

90. In the alternative to Count X, Cukr brings this Count derivatively on behalf of the funds for the reasons stated in paragraphs 83–86.

91. Lasater Capital owed the funds fiduciary duties and breached them by committing the waste alleged in Count X.

92. T. Lasater, B. Lasater, and Worley knowingly participated in that breach. T. Lasater directed the Affiliated Loans knowing the borrowers were distressed while marketing that the enterprise had "never lost investor capital" (¶¶ 29–31); B. Lasater executed the loans and oversaw accounting that did not disclose their impairment (¶¶ 32, 38); and, on information and belief, Worley structured the passive-consent amendment that purported to authorize the loans, knowing it concealed the conflict (¶¶ 30–31).

93. The funds have been damaged in an amount to be proven at trial.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff William Cukr respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally where applicable, and on behalf of the partnerships on the derivative claims, and award the following relief:

a. compensatory damages in an amount to be proven at trial, including Cukr's $450,000 in unreturned principal, the $210,950.01 in earnings credited to his accounts but never paid, other accrued but unpaid returns, and any additional losses established through an accounting;

b. rescission of Cukr's securities purchases or, in the alternative, damages measured by the consideration paid plus interest at the legal rate, less income received, as provided by the Texas Securities Act;

c. disgorgement, restitution, and an accounting of all profits, fees, compensation, capital, and other benefits obtained or retained by Defendants through the wrongful conduct;

d. on the breach-of-contract, implied-covenant, derivative-waste, and aiding-and-abetting-waste claims, all available legal and equitable relief, including an accounting, restoration of partnership assets, and recovery of the damages suffered by the partnerships;

e. exemplary damages under Tex. Civ. Prac. & Rem. Code ch. 41 and as otherwise permitted by law;

f. reasonable attorneys' fees under Tex. Gov't Code § 4008.060, Tex. Civ. Prac. & Rem. Code § 38.001, and any other applicable statute;

g. pre-judgment interest at the maximum rate allowed by law from the dates of Cukr's investments;

h. post-judgment interest at the maximum rate allowed by law;

i. costs of court and litigation expenses; and

j. such other and further relief as the Court deems just, equitable, and proper.

## VII. JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: October 22, 2026

Respectfully submitted,

*/s/ Alyssa Ann Tyler*
Alyssa Ann Tyler
State Bar No. 24115211
**Law Offices of Robert V. Cornish, Jr., PC**
680 South Cache Street, Suite 100, PO Box 12200
Jackson, WY 83001
Tel: (307) 264-0535
atyler@rcornishlaw.com

*Attorney for Plaintiff William Cukr*

**VERIFICATION**

I, William Cukr, declare as follows. I am the Plaintiff in this action and a limited partner of KCAP Lending Fund XIII, LP; KCAP RE Fund XI, LP; and KCAP RE Fund XII, LP. I have read the foregoing Verified Original Complaint. The allegations concerning me and my own acts are true and correct based on my personal knowledge, and all other allegations are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed on October 21, 2026, in DENTON County, Texas.

William Cukr